Good morning, Your Honor, and may it please the Court. My name is Ian Shelton, and I'm counsel for Petitioner Kern Oil. I'd like to reserve five minutes of my time for rebuttal. I wanted to begin by briefly addressing a ceiling issue. Kern maintains that the specific dollar amount of Kern's compliance costs and damages is Kern's confidential business information that should not be publicly disclosed. During oral argument, Kern will avoid reference to the specific dollar amounts, and I've informed EPA of Kern's position. As stated in Kern's opening brief, Kern does not object to the panel's opinion being public, but Kern does request the opportunity to request redaction of specific dollar amounts if the panel chooses to include them in its opinion. There's been no motion to seal or have the argument in any portion off the record, but we are familiar and understand the sensitivities about the sealed documents, and should there be an opinion that would include such information or allusion to it, then we would take appropriate steps. Thank you, Your Honor, and that is all that Kern requests. EPA admits that remand is required. The issue before the panel is whether it should engage in judicial review of EPA's old deficient remedy when granting Kern's 2017 SRE exemption, and the answer to that question is yes. All information necessary for this panel to engage in judicial review of EPA's default remedy was in the record prior to supplementation, and the supplemented record simply confirms that EPA failed to consider all relevant factors when crafting its remedy. So it's important to identify what was already in the record before supplementation and what were the key admissions regarding those issues in EPA's brief. First, the pre-supplementation record shows that EPA violated a mandatory 90-day statutory deadline for action that's found in the SRE statute itself, despite Kern repeatedly raising this issue at the administrative level. This panel can and should review that issue, and there is no explanation that EPA could provide on remand that would justify a violation of a mandatory deadline, and indeed in EPA's brief it does not even posit that it would be possible to provide that justification. When I was looking at case law regarding a violation of a statutory deadline, really the only remedies I saw were an order compelling the agency to meet the deadline. And here of course, or an order compelling the agency to take the action required by the statute. Here EPA has taken the action required by the statute. So what would be the basis for any further order? Yes, Your Honor. Unlike other statutes, Your Honor, the SRE statute has a specific credit program that is provided for in the statute. EPA has implemented that credit program to provide for credits to offset compliance costs once an exemption is granted. And in the past, in the Pruitt case for example, it has used those credits to remedy delay caused by EPA in either wrongfully denying an exemption that should have been granted, or in this case wrongfully delaying a grant. So the statute doesn't require any particular remedy other than an exemption. And the EPA says, well, here's why we did it differently for Pruitt. It hasn't promulgated any regulations explaining a remedy. So it says its usual practice is to do exactly what it did for Kern. So what's the basis for saying EPA has any other obligations? Yes, Your Honor. So addressing that issue, the statute says that Kern is entitled to an exemption, and an exemption is an immunity from compliance. In implementing the credit program, EPA has applied a default policy to all refineries granted a small refinery exemption, where it mechanically refunds the unexpired grants that were retired to demonstrate compliance, ignores the expired rents, and doesn't consider any compliance, any actual compliance costs or the value of the rents that it gives back to the granted entity. And that shows that in implementing that program, it has given superior treatment to other small refiners. This court can look at the statute and evaluate whether that default remedy, which EPA states in its brief, it describes it as its normal practice. The panel can address whether that is consistent with the statutory language of an exemption and whether it's also consistent with the remedies that EPA previously provided. So as I read your brief, you were arguing for an interpretation of exemption, which possibly is permissible, possibly is not. But EPA hasn't issued any or promulgated any interpretation of that, which is why I guess for a man that it would be able to determine or to explain its reasoning. But I didn't see any reason why your interpretation was any other than any other. Is there any basis for that? It seemed a little strange to me. Your Honor, we believe that our interpretation actually flows precisely from the statute. An exemption is an immunity from compliance. I think that's what you got, right? So the beginning of the statute actually gives a definition of exemption. It says a temporary exemption is the requirement of paragraph two shall not apply to small refineries. And so all the EPA had to do to give an extension of the exemption is to say that paragraph two doesn't apply, which is exactly what they did. So help me understand what the basis is for your interpretation. Right. The basis for the interpretation is based on the statute itself. The statutory language says it's entitled to an exemption. The reason Kern received an exemption is to alleviate the disproportionate economic hardship caused by compliance. If EPA grants a remedy, in this case, EPA granted a remedy that reimbursed 12% of compliance costs. That does not fulfill the purpose, the statutory purpose of the exemption, which is an immunity from compliance. Furthermore, the statute states that it could be granted at any time. EPA has decided to adopt a formulaic mechanical refund policy that refunds without considering actual disproportionate economic hardship, which is the basis of the exemption. EPA in addressing this needs to consider the economic harm that's caused by granting relief that only awards 12% of the reimbursement. I'm having at least these, even if these are plausible, you could make these arguments to the agency. Perhaps they would agree with you. But here you're essentially arguing that this interpretation is actually compelled. I'm not sure what basis you have in the statute to make that argument. Your Honor, so one thing on as far as the remand issue goes, if this case is remanded for EPA to provide an explanation, we already have an admission that EPA applied its default policy. We know from the it's all letter and from the bunker memo that this was simply an application of its policy. If it wants to provide any explanation beyond what's already in there, it should be required to do so within 90 days, which is when which is the amount of time that it was supposed to decide the exemption issue in the first place. So let me understand the that's really the issue we're dealing with here. We have a statute that gives you an exemption. And then we have this language from the Clean Air Act regs about the disproportionate economic harm on remand. You're asking. A remand plus what? Yes, Your Honor. Two things, primarily a remand that's limited. That's a limited duration remand. So the EPA is required to give a decision within 90 days. The basis for that is, I mean, I understand why they have to rule within 90 days. But now that the time has passed and everything has taken place already, why do they have to give an explanation in 90 days? But what is the damage to current if they don't have an explanation within 90 days? Or what is the source of a requirement that they act in 90 days? Is there any precedent for that? I couldn't find any. Yes, Your Honor. It states in the statute that EPA must issue a decision in 90 days. Well, they violated that. We understand. But now that time has passed and you got your decision. So then why would they have to give an explanation within 90 days? Your Honor, if they violated the statute within 90 days and that is that is part of the reason it's remanded. They should not be given an open-ended time period within which. Why? What's the basis for that? Because that is what the statute states, Your Honor. No, the statute doesn't have to give a decision within 90 days. And they violated that. We understand. But I guess I don't understand. Now that time has passed. I don't understand why the explanation has to be within 90 days after they've already decided. Your Honor, Kern's position is that the statute, the 90-day period would apply to any remand actions as well as the original action. Can we go back to my second question? Yes, Your Honor. I don't think you had an opportunity to answer. You started to say there were two things. One, you want a limited duration. And we'll, of course, talk with the EPA about that issue. And then you said there's a second remedy or aspect that you're seeking on remand. What is that? Yes, Your Honor. It's a 90-day limit, and it's a limitation to reconsideration of the remedy and not revisiting the grant. EPA granted Kern its 2017 exemption. Kern did not appeal the grant. It is only challenging the remedy. The grant is final. Therefore, on remand, EPA should just decide the remedy issue. And if it wants to provide further explanation, it can explicate upon that. However, it should be limited to that. Your concern is that if it goes back, they might yank the exemption altogether? Yes, Your Honor. They already alluded to their plan to do that in their 28-day letter. And why don't they have authority to do that? Because it's a final decision, Your Honor. It's unappealed. It was not an issue that was— Oh, it's unappealed, right? Aren't you appealing their determination? Your Honor, we're appealing the challenge to the remedy only. The issue as to the grant is final. Can you address the Hawley Frontier case and whether that case could impact this one? Yes, Your Honor. So Kern's position is that it would not impact this case. As I alluded to regarding the remand limited to remedy only, the Hawley Frontier case addresses the grant and whether there has to be a continuous string of exemptions in order to be entitled to the grant. Since Kern's not appealing that issue and it's final, it will have no impact. Furthermore, Kern has separately filed what are called gap year petitions to fill the holes in its applications in prior years. That's currently on appeal in the D.C. Circuit. And those cases have been held in abeyance until the Supreme Court rules. Therefore, there's been no final determination that Kern does not have an unbroken line of exemptions. But ultimately, Kern's position as to this appeal is that it's a moot point because Kern has not appealed the grant and that's final. You have only two minutes left. Of course, we've asked you a lot of questions, so I'm going to add some time to your rebuttal and we'll compensate the EPA as well. Mr. Pinkston? Good morning. My name is Daniel Pinkston. I'm an attorney with the Environment and Natural Resources Division of the Justice Department representing EPA. This case is actually a pretty simple case. The problem here is that EPA did not provide any explanation for its, quote, remedy decision, which was simply to return unexpired RINs to Kern. It's a fundamental precept of Administrative Procedure Act law that the court should consider and judge the explanation provided by the agency at the time of the action that it took. In this case, there was simply a statement from a mid-level EPA employee via email to Kern saying, We're going to return the unexpired 2017 RINs back to Kern. There is no explanation in this record for EPA's decision. It's unfortunate, perhaps, that EPA didn't provide such an explanation, but the fact is it didn't. The appropriate remedy in this case, and all parties agreed that there should be a remand, the appropriate action by the court is simply to remand back to EPA to provide an explanation. What do you envision happening on remand? On remand, I believe that Kern would be able to make whatever presentation it wishes to EPA, and then EPA will decide in the light of a number of considerations which we've laid out in our brief, which may include a decision by the Supreme Court and Holly Frontier, about what is an appropriate remedy in this case, or in any of these cases, because neither the statute nor the regulations provide for what a, quote, remedy should be when a small refinery seeks and obtains its exemption after the compliance date. If, for example, Kern had sought and obtained its exemption before the compliance date, we wouldn't be here because it wouldn't have had to retire the RINs. Or Kern could have, and I'm not suggesting it should have, but Kern could also have sought basically to delay its action in retiring RINs. There's a provision for that in the regulations. And then if there had been a decision by EPA saying, yes, you have the exemption, it wouldn't have had to retire RINs. Now, we don't suggest that Kern was compelled to seek the exemption before it complied with its 2017 obligations. But the point of all this is that there are a number of considerations here which have not been discussed in the record and which should be part of EPA's reconsideration. Let me ask you, do you agree with Mr. Shelton that the grant of the exemption is clear and that happened? The question is the remedy. I think that, yeah, the question is the remedy. All right. So on that point, before we go further, if there's a remand with a 90-day time frame, within that time frame, this procedure would take place presumably of argument presentation about the scope of the remedy and a final decision would be made on that. Is that what would happen? Well, if that was a condition that the court imposed, yes. Why wouldn't the court impose a condition? We already know that EPA busted the deadline. So we've got to put in some reasonable deadline or we're going to be like in a Moby and it's just going to continue forever. Well, EPA unfortunately did not meet the 90-day deadline. No, it did not. As has been pointed out, that doesn't affect or control consideration of the remedy on remand. And there are a number of things here that have to be thought of as well. The Holly Frontier case is an important issue here. Kern did not obtain an exemption for 2014, 15, or 16. If the Supreme Court affirms the Tenth Circuit and says that it's an improper interpretation of the statute to extend an exemption when the small refinery doesn't already have one, then we may have a problem here. I thought you just said a minute ago that the exemption here was granted. So the only impact of Holly Frontier would be that the exemption perhaps could have been denied. But I thought you just said a moment ago that EPA was not going to do that on remand. The only question was the remedy. Well, even on considering remedy, if the Supreme Court has said that they were not entitled to an exemption, that may also factor into a remedy decision. But there are some issues that we would want to consider. This could go on forever. Obviously, there is a 90-day deadline, and it didn't happen. But in a normal course, if EPA had followed the rules, it would have, within that 90 days, grant the exemption, deny the exemption, and then give the remedy. And it would have laid out, as you pointed out, a rationale for that, which, for whatever reason, didn't occur here. But that's what would have happened within the 90 days had the statute been followed, correct? Right. So now, here we are. That didn't happen. So in a way, the EPA is getting a second chance to go back and give a rationale and an explanation, which it should have given earlier after the 90-day grant. Do you have a proposal for the court as to how long you think the EPA should have to do that? Well, not a specific proposal, Your Honor. We think that 90 days is not compelled by the statute. I understand that there is an issue raised by the petitioner about EPA's timeliness. But there are other issues to consider as well, which could conceivably take more than 90 days, and we pointed out some of those in our brief. One of the biggest is whether or not Kern, or particularly Kern, but perhaps other refineries as well, have passed through these costs of obtaining the RINs. As we point out in our brief, EPA has been raising this issue since 2015 in a number of different situations, including in its annual statements of what the requirements for renewable fuel volumes are. It's an important issue. So it's an important issue, and the answer to that issue is either they've passed them through or they've not passed them through, or it's unclear whether they've passed them through. And once you know that information, or don't get the information, then the EPA can make its decision. So all the hurdles that you raised seem to me to be simply considerations that might go into the explanation, which should have been given before, but now here we are. So it doesn't, to me, suggest that somehow this reasonable timeframe of 90 days shouldn't be met. Could I ask a question? Would you let him answer that question first as to why a 90-day period wouldn't be appropriate? Your Honor, EPA would work with that amount of time if that was the court's order. Could I ask just a threshold question? I guess I'm not understanding this distinction between the grant of the exemption and a remedy. As I understood Colonel Oyl's argument, the exemption, it's an interpretation of the exemption that requires benefit to the recipient of the exemption. So I didn't see anything in the statute, and of course there are no regulations separating these decisions, and from what Colonel Oyl is saying, it's the same decision. So can you explain to me how exemption and remedy are separate, or are they part of the same statutory framework? Well, remedy has been used sort of as shorthand in this matter. We agree with an interpretation of the statute which only says exemption, but nothing in that statutory language or in the regulations states or implies that the applicant for a small refinery exemption must be made whole in any way. The dictionary, I'm agreeing with that statement. The dictionary definitions certainly don't compel the reading that Kern makes here. But EPA has, as part of its belief that exemption simply means you don't have to comply with the statute any further, the program any further, so EPA then has returned RINs that had not expired. So when we say remedy, there is no quote remedy in the statute or in the regulations. The practice has been in cases like this to return RINs that had not yet been retired. So we're just talking about the scope of the exemption. So the scope of the exemption would be your exempt from complying plus that means something, something else. And that's what EPA as a practical matter has done and said we un-retire the RINs that you submitted. Am I understanding that correctly? Your Honor, I'm sorry. I didn't quite get that question. My fault. Sorry. Well, I'm just trying to understand what the EPA would be deciding on demand. So you're actually deciding the scope of the exemption because the exemption has been your exempt from complying and as part of that exemption we will un-retire the RINs. Is that right? Well, yes. EPA has authority under the small refinery portion of the statute to issue regulations, etc. In other words, to administer the program. And there are a number of factors that would need to be considered on remand, which I won't reiterate, but they're there. And of course we've had a change in administration as well. And if EPA is in a position where on remand it must set forth its rationale for what it's doing, then that may actually be of some use. Generally, because this small refinery exemption world is very confused at this point. I agree with that observation. I mean, has EPA put out any kind of guidance to explain to small refineries how this is all supposed to work? Because that seems to be part of the difficulty here. No, Your Honor. I mean, there has been a letter, which is subject to a pending motion to supplement the administrative record, the Insol letter, which has been referred to, which states, which was issued nine months after EPA's decision here, which says it sets forth its usual procedure in cases like this, which is to return unretired RINs back to the refinery. There is no definitive guidance which has been issued on this point. But what we've been calling a remedy is really part of the exemption process, correct? Well, the exemption is based on disproportionate economic harm. I mean, there are standards for that. It's described in the briefs how a decision is arrived at. The remedy is apart from whether or not an exemption is granted. Well, that's consistent with what Mr. Shelton said. In other words, the grant of the exemption, per se, is not to be revisited. But you're now saying that when EPA grants these exemptions, the practice is to make certain adjustments. And what those are and the considerations that go in those, there's not some precise regulatory construct for that, but there's some EPA practice. Is that fair to say? That's correct, Your Honor. And that's why, as we request, this should be a remand to EPA without instructions or guidance about how EPA should reach its decision on the quote remedy. Once that happens, then it may come back up to the court if Kern doesn't like it. It might not. But that is under our ordinary system of administrative law, is what should happen here. Is the EPA's practice to take into consideration the timing and delay in granting the exemption? Well, in granting the exemption... Having granted an exemption, but having done it out of time, is it EPA's practice to take that fact into consideration and the economic consequences of that fact? Well, the practice has been, in a case like this one, where there is an exemption granted after the compliance date, the ordinary practice is to, as we've discussed, simply return the unretired RINs at that time. In this case, Kern had some time, it was a short time, but was able to sell some of those unretired RINs. As alluded to in the briefs, there's one instance in which EPA did replace RINs and give small refineries RINs back. That was in the Sinclair case in the Tenth Circuit and involving a number of small refineries. In that case, because EPA had originally denied the exemption and the refineries appealed that, and it was reversed, EPA's denial was vacated and it was remanded. By the time the litigation had happened, all the RINs that those small refineries had cashed in, so to speak, all the RINs were expired. In that one particular instance, EPA did return or replace those RINs. But in all other instances, that's the only time it's happened, and EPA views that as an anomaly because of the effect of the litigation on the process. I think you've got your argument in mind, and unless my colleagues have further questions, we'll return to Mr. Shelton. Any further questions? Thank you very much. Thank you. Thank you, Your Honor. If you'll put three minutes on the clock, please. Thank you, Your Honor. I wanted to identify what form of judicial review Kern's requesting. Kern is requesting instruction from the panel that EPA can consider delay in contributing to Kern's damages, that EPA can consider economics, the economics of the remedy when crafting a remedy, and that EPA can consider RIN replacement, which is a remedy that it has provided to other small refiners. Is there anything that stops the EPA from considering whatever it wants to? I mean, the statute, I guess there's some difference between you and the EPA on the statute. You seem to be saying that the word exemption includes the remedy, and the EPA seems to be saying, no, the exemption and the remedy are somehow distinct. But in either case, it's up to the agency to interpret ambiguous language in the statute within the statutory framework. So I'm not sure why any instructions from the court about what to consider is particularly relevant. Can you explain that? Yes, Your Honor. It's because EPA admitted in its brief that Kern got the default. Kern got the standard, the mechanical refund of RINs. Are you saying that that would be an impermissible interpretation of the statute? Yes. So are you saying that because we don't have any formal promulgation by the EPA? I know you argue the insult letter, but why wouldn't you have the opportunity after they actually issue their explanation or interpretation of the statute to argue that it's impermissible? Why would we do that in advance? Your Honor, if that happens, I wanted to point out that the relief EPA seeks is the same relief that was denied to EPA when they requested voluntary remand last summer. Well, but that wasn't this panel. That was Emotions panel. So that's sort of irrelevant. And Your Honor, if that's the case, that is why it is essential to the damage to Kern caused by this decision is measured in the millions of dollars. This has been devastating for Kern, and it needs relief soon. Therefore, if it's to benefit at all from remand, it needs to be within 90 days because that's the deadline in the statute, and it needs to be limited to the remedy, which is the issue that EPA failed to give. I think he agrees with you on that. Your Honor, I do. The only daylight between you really is when it goes back. Your Honor, I think you want to make sure that they consider delay economics, etc. I don't know if they will, but then we would have a concrete decision that could be appealed from, right? Your Honor, the way I interpret what EPA's position is, is that they intend to revisit the grant, and that should not be authorized by the panel. It should be limited to a remedy-only remand within 90 days. Well, I thought your position was that this was all an interpretation of the word exemption. So if the EPA goes back to review the nature of what the word exemption means, and particularly in Supreme Court decisions, I'm not sure why they couldn't say, well, in fact, the exemption doesn't, that Kern is not entitled to the exemption. No, Your Honor. Kern's position is that those are separate issues. So what's the basis for the remedy then? Because I didn't see it in the statute. The basis for the remedy is that the statute states that Kern is entitled to an exemption. It received the exemption. If it would have received it before compliance, it wouldn't have had to comply. If it receives it after compliance, then based on the at-any-time language, it's entitled to a remedy through the credit program that's also provided for in the statute to offset unreimbursed compliance costs. And this panel can assess whether EPA's implementation of that credit program, this mechanical process that doesn't consider economic damage, even though that's the reason the exemption is granted, to give economic relief from the hardship caused by compliance. The panel can separately address whether its remedy effectuates the purpose of the exemption Kern was granted. The fact that it was granted the exemption, those are different standards. Kern met the standard because it's a small refinery and there was disproportionate economic hardship. But then it received a remedy that saddled it with 88% of the compliance costs associated with that. And this years and years of delay has brought Kern to the brink, to the tune of the millions of dollars discussed in Kern's brief. You can move on to wrap it up now because we've given you an additional two minutes as well. Yes, Your Honor. The only other points are that the IDZOL letters should be supplemented just for the same reasons that the other materials have been supplemented. The statutory deadline is mandatory. The fact that EPA blew the first 90-day deadline doesn't give them a free pass to take years or decades to decide the issue on remand. It would reward ignoring the issue that Kern repeatedly brought up. Finally, as to this issue of delay, Kern did not receive anything for the 2016 RINs it retired to demonstrate compliance. And this delay gave them nearly worthless RINs. Those issues need to be addressed on remand and they must be addressed promptly. Thank you. Thank you. I'd like to thank both counsel for your argument today. The case was argued of Kern Oil versus the EPA is submitted. Our next case for argument is United States versus Taurus.
judges: McKeown, Ikuta, Bress